This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Tommy L. Ragland, Jr., appeals his conviction in the Summit County Court of Common Pleas. We affirm.
On August 1, 2000, the Summit County Grand Jury indicted Mr. Ragland on one count of domestic violence, in violation of R.C. 2919.25(A), alleging that he knowingly caused or attempted to cause physical harm to Kannisha Turner on June 27, 2000 and that, as he had been previously convicted of domestic violence, it is a felony of the fifth degree. See R.C.2919.25(D). On September 15, 2000, a supplemental indictment was filed as a result of an unrelated incident, which occurred on September 7, 2000. Mr. Ragland was indicted for possession of cocaine, in violation of R.C. 2925.11(A), possession of marijuana, in violation of R.C.2925.11(A), violating a protection order, in violation of R.C. 2919.27, and driving under suspension, in violation of R.C. 4507.02(B)(1).
A jury trial was held on all charges, commencing on December 4, 2000. During trial, the charges of violating a protection order and driving under suspension were dismissed upon the recommendation of the state. The jury found Mr. Ragland guilty of domestic violence, but acquitted him of possession of cocaine in a verdict journalized on December 7, 2000. The trial court took the charge of possession of marijuana, a minor misdemeanor, under advisement, and on December 11, 2000, found Mr. Ragland guilty of possession of marijuana. Mr. Ragland was sentenced accordingly. This appeal followed.
Mr. Ragland asserts two assignments of error. We will discuss them together to facilitate review.
 First Assignment of Error THERE IS INSUFFICIENT EVIDENCE TO SUPPORT T[HE] JURY'S VERDICT FINDING APPELLANT GUILTY OF DOMESTIC VIOLENCE.
 Second Assignment of Error THE JURY'S VERDICT FINDING APPELLANT GUILTY OF DOMESTIC VIOLENCE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Mr. Ragland avers that his conviction for domestic violence is supported by insufficient evidence as a matter of law and is against the manifest weight of the evidence. Specifically, Mr. Ragland challenges his conviction for domestic violence on two grounds: 1) there was insufficient evidence that he knowingly caused or attempted to cause physical harm to Kannisha Turner and 2) there was insufficient evidence to establish that Ms. Turner was a family or household member. We disagree.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.
(Emphasis omitted.) State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4.
Mr. Ragland appeals his conviction for domestic violence, in violation of R.C. 2919.25(A), which provides: "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." A violation of R.C. 2919.25(A) is a felony of the fifth degree if the offender has previously been convicted of domestic violence under R.C.2919.25. R.C. 2919.25(D). R.C. 2901.22(B) defines the culpable mental state of knowingly and provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
Under R.C. 2919.25, a "`[f]amily or household member'" includes "a person living as a spouse" who is "residing or has resided with the offender[.]" R.C. 2919.25(E)(1)(a)(i). A "[p]erson living as a spouse" is defined as
 a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.
R.C. 2919.25(E)(2).
In State v. Williams (1997), 79 Ohio St.3d 459, 462, the Ohio Supreme Court defined the term "cohabitation" as contained in R.C. 2919.25(E)(2) and declined "to adopt a narrow definition of `reside' which would limit `family or household members' to those who actually share one residential address." The court held that "[t]he offense of domestic violence, as expressed in R.C. 2919.25(E)(1)(a) and related statutes, arises out of the relationship of the parties rather than their exact living circumstances" and found that "[t]he essential elements of `cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium." Id. at paragraphs one and two of the syllabus. The court proceeded to list possible factors which could establish cohabitation. According to the Ohio Supreme Court, "[p]ossible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations." Id. at 465. Significantly, the "factors are unique to each case and how much weight, if any, to give each of these factors must be decided on a case-by-case basis by the trier of fact." Id.
In the present case, Detective Brian Callahan of the Akron Police Department testified that on June 27, 2000 at approximately 4:40 p.m., he and his partner, Officer Jason Hill, responded to a 9-1-1 call concerning a physical altercation which was occurring at 1154 LaCroix Avenue in the City of Akron, County of Summit, Ohio. When they arrived, Mr. Ragland had already left, and the officers spoke with Kannisha Turner, who resided at 1154 LaCroix Avenue. Detective Callahan noted that Ms. Turner appeared to be scared and excited and that her clothes were in disarray. Additionally, the living room of the residence looked as if "a tornado went through [it]" in that furniture had been overturned and "stuff [was] laying all over the floor[.]"
According to Detective Callahan, Ms. Turner informed him that she had gotten into an argument with her boyfriend, Mr. Ragland, because he was selling illicit drugs from her home. Detective Callahan further testified that Ms. Turner had told him that Mr. Ragland threw her onto the living room table and then obtained a knife from the kitchen and threatened to slash her furniture with the knife. According to Detective Callahan, Ms. Turner related that she smacked Mr. Ragland when he went to cut the furniture, and that, in response, Mr. Ragland grabbed her by her hair and sliced at her with the knife, cutting her clothing.
Detective Callahan stated that Ms. Turner had scratches on her neck. Officer Hill noted that Ms. Turner "had a couple of abrasions, scratches on her neck, [and] a bruise on her arm." Officer Hill further testified that Ms. Turner had indicated that her breast had been cut with the knife; however, this injury was not evident to him. Photographs of Ms. Turner's injuries, which were shown to the jury and admitted into evidence, revealed some scratching and bruising.
As part of a plea agreement with the state made just before trial commenced,[1] Ms. Turner testified on behalf of the state. It is important to note, however, that at the time of trial, Ms. Turner had resumed her romantic relationship with Mr. Ragland.
Ms. Turner testified that, on June 27, 2000, she and Mr. Ragland were arguing because he had inquired where she was going, and she responded that she was going to go "[w]herever [she] want[ed] to go[.]" According to Ms. Turner, Mr. Ragland then got the kitchen knife and threatened to cut up the furniture, which he had previously purchased for her. She jumped in his way to prevent him from slashing her furniture, when her neighbor arrived and told Mr. Ragland not to cut the furniture because Mr. Ragland and Ms. Turner were "`going to get back together anyway[.]'" Ms. Turner testified that when Mr. Ragland turned back around, he accidentally cut her chest. She also remembered falling over a vacuum cleaner. Even though Ms. Turner testified that Mr. Ragland cut her by accident, she admitted that Mr. Ragland had shoved her and that the photographs, which were admitted into evidence, fairly and accurately depicted the injuries she sustained that day. She further admitted to being frightened of Mr. Ragland on June 27, 2000. On the 9-1-1 tape, which was played for the jury and admitted into evidence, Mr. Ragland and Ms. Turner can be heard vehemently screaming at each other with Ms. Turner shouting at Mr. Ragland to get out of her house.
The police arrested Mr. Ragland approximately two weeks later at 1154 LaCroix Avenue, Ms. Turner's address. Officer Hill testified that Ms. Turner was upset that Mr. Ragland was being arrested. Ms. Turner testified that she bailed him out of jail. There was also testimony that Mr. Ragland was willing to take the blame for the drug charges against Ms. Turner, see infra, so that Ms. Turner would not have to go to jail while she was pregnant. The state also presented evidence that Mr. Ragland had previously been convicted of domestic violence in 1990.
After thoroughly reviewing the record, we find that the jury did not act against the manifest weight of the evidence in convicting Mr. Ragland of domestic violence, in violation of R.C. 2919.25(A). Consequently, we conclude that Mr. Ragland's assertion that the state did not produce sufficient evidence to support a conviction, therefore, is also without merit. See Roberts, supra, at 4.
Mr. Ragland's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ____________________________ WILLIAM G. BATCHELDER
BAIRD, J., CARR, J. CONCUR.
[1] The plea agreement concerned Ms. Turner's indictment on drug charges arising from the incident on September 7, 2000. Regarding that incident, there was testimony that Mr. Ragland allegedly threw a bag of marijuana to Ms. Turner, which she hid in her bra, as the police were making an investigatory stop of the vehicle.